```
      IN THE UNITED STATES DISTRICT COURT FOR THE
               EASTERN DISTRICT OF OKLAHOMA
```

RICHARD SAM,                         )
                                     )
            Plaintiff,               )
                                     )
                                     )   Case No. CIV-20-258-JFH-KEW
                                     )
COMMISSIONER OF THE SOCIAL           )
SECURITY ADMINISTRATION,             )
                                     )
            Defendant.               )

## REPORT AND RECOMMENDATION

Plaintiff Richard Sam (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts the Commissioner erred because the ALJ incorrectly determined he was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and the case REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work

but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*, *Casias*, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was 50 years old at the time of the ALJ's decision. He has at least a high school education and past relevant work as a pump tender, pipeline laborer, and a forklift operator. Claimant alleges an inability to work beginning on September 15, 2017, due to limitations resulting from high blood pressure, sinus problems, hernia problems, right anterior cruciate ligament injury, meniscus injury, left shoulder injury post-surgery, right rotator cuff injury, fractured left collar bone, left elbow injury, and arthritis.

**Procedural History**

On February 8, 2018, Claimant protectively filed an application for a period of disability and disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act and an application for supplemental security income benefits pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. His applications were denied initially and upon reconsideration. On June 11, 2019, ALJ Michael Mannes conducted an administrative hearing in McAlester, Oklahoma. Claimant was present and testified. On September 26, 2019, the ALJ entered an unfavorable decision. Claimant requested review by the Appeals Council, and on May 27, 2020, it denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform light work with additional limitations.

**Errors Alleged for Review**

Claimant asserts the ALJ (1) failed to properly consider, evaluate, and weigh the medical evidence at step two, (2) failed

to adequately account for all of Claimant's impairments in the RFC assessment, (3) failed to properly consider and weigh the medical opinions, (4) failed to properly consider Claimant's consistency/credibility, and (5) failed to identify jobs available to Claimant at step five.

### Step Two and Step Four Analysis

In his decision, the ALJ found Claimant suffered from a severe impairment of degenerative joint disease status post surgery. (Tr. 17-18). He determined Claimant could perform light work, except he was limited to occasionally climbing ramps or stairs and never climbing ladders, ropes, or scaffolds. He could frequently balance, occasionally stoop, kneel, crouch, or crawl, occasionally reach overhead bilaterally, and frequently handle and finger bilaterally. He must alternate sitting and standing every 20-30 minutes throughout the workday in order to change position for a brief positional change of less than five minutes but without leaving the workstation. (Tr. 18).

After consultation with a vocational expert ("VE"), the ALJ determined Claimant could perform the representative jobs of electrical accessory assembler and counter clerk, both of which the ALJ found existed in sufficient numbers in the national economy. (Tr. 21-22). As a result, the ALJ concluded Claimant has not been under a disability from September 15, 2017, through the date of the decision. (Tr. 22).

Claimant first argues that the ALJ erred at step two because he failed to properly address his diagnoses of a hammertoe deformity and right ulnar entrapment. He also asserts that the ALJ failed to account for these conditions in the RFC.

The focus of a disability determination is on the functional consequences of a condition, not the mere diagnosis. *See*, *e.g.*, *Coleman v. Chater*, 58 F.3d 577, 579 (10th Cir. 1995)(the mere presence of alcoholism is not necessarily disabling, the impairment must render the claimant unable to engage in any substantial gainful employment.); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988)(the mere diagnosis of arthritis says nothing about the severity of the condition), *Madrid v. Astrue*, 243 Fed.Appx. 387, 392 (10th Cir. 2007) (the diagnosis of a condition does not establish disability, the question is whether an impairment significantly limits the ability to work); *Scull v. Apfel*, 2000 WL 1028250, at *1 (10th Cir. 2000) (disability determinations turn on the functional consequences, not the causes of a claimant's condition).

To the extent Claimant contends his diagnoses for a hammertoe deformity and right ulnar entrapment should have been included as severe impairments at step two, where an ALJ finds at least one "severe" impairment, a failure to designate another impairment as "severe" at step two does not constitute reversible error because, under the regulations, the agency at later steps considers the combined effect of all of the claimant's impairments without regard

to whether any such impairment, if considered separately, would be of sufficient severity. *Brescia v. Astrue*, 287 Fed. Appx. 626, 628-629 (10th Cir. 2008). The failure to find that additional impairments are also severe is not cause for reversal so long as the ALJ, in determining Claimant's RFC, considers the effects "of all of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'" *Id.*, quoting *Hill v. Astrue*, 289 Fed. Appx. 289, 291-292 (10th Cir. 2008).

Claimant, however, also challenges the ALJ's RFC assessment alleging the ALJ failed to properly consider his subjective complaints, including complaints regarding his hammertoe deformity and right ulnar entrapment. Claimant contends that in assessing the RFC, the ALJ largely ignored his testimony and the factors used for evaluating the consistency of his subjective complaints.

As part of his evaluation of Claimant's symptoms, the ALJ noted the two-step process for evaluating symptoms set forth in Social Security Ruling 16-3p and the requirements of 20 C.F.R. §§ 404.1529, 416.929. (Tr. 18). He determined Claimant's medically determinable impairments could reasonably cause some of his alleged symptoms, but Claimant's statements regarding the intensity, persistence, and limiting effects of symptoms were not "entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 19).

7

Deference must be given to an ALJ's evaluation of Claimant's pain or symptoms, unless there is an indication the ALJ misread the medical evidence as a whole. *See Casias*, 933 F.2d at 801. Any findings by the ALJ "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). The decision "must contain specific reasons for the weight given to the [claimant's] symptoms, be consistent with and supported by the evidence, and be clearly articulated so the [claimant] and any subsequent reviewer can assess how the [ALJ] evaluated the [claimant's] symptoms." Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *10. However, an ALJ is not required to conduct a "formalistic factor-by-factor recitation of the evidence[,]" but he must set forth the specific evidence upon which he relied. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

As Claimant points out, the ALJ failed to adequately discuss his testimony from the hearing. The ALJ made no reference to Claimant's statements from his function report and summarized his testimony from the hearing as follows: "The claimant testified that he feels he is unable to work due to his joint pain. He has undergone rotator cuff repair." (Tr. 19). The only other reference to Claimant's testimony by the ALJ was in the assessment of the opinion evidence, when the ALJ noted Claimant could perform odd jobs such as lawn work. (Tr. 20).

At the hearing, Claimant testified he underwent knee surgery in 2014. He had not worked full time since the surgery, other than performing odd jobs such as mowing with a friend. The last time he performed any odd jobs was about a year prior to the hearing. (Tr. 37-38, 44). When asked what kept him from working, Claimant testified his diabetes caused him problems, he was in constant pain from arthritis, his right hand swelled up and locked up because of carpal tunnel, his left shoulder had not felt right since his rotator cuff surgery and broken collar bones from a bicycle accident, he experienced constant pain in his hips and needed surgery, and he also needed right rotator cuff surgery. (Tr. 42, 44-45). He also experienced hypertension. Claimant took medication for his diabetes and hypertension. (Tr. 43-44).

Claimant testified his left shoulder was in constant pain and the bone of his left collar bone stuck out. He underwent physical therapy, but he could not raise his left arm above shoulder height and could not fully extend it or raise it above his head without popping and pain. (Tr. 45-46). He experienced constant pain in his right arm and right hand swelling due to carpal tunnel and arthritis. (Tr. 47). He described his pain as constant and sharp. He took Tylenol 3 for pain but testified it did not help. He described his pain on a day-to-day basis as a seven on a scale of ten. (Tr. 48). Claimant also used a heating pad for his shoulders,

hips, and back every night. He testified the heating pad helped for awhile but then it stopped helping. (Tr. 48-49).

Claimant testified he could walk half a block, lift or carry five pounds, and lift his right arm up but not without experiencing constant pain and his rotator cuff hurting. He could pick up pocket change and sometimes hold a pen and sign his name with his right hand, except it was difficult when his right hand swelled. His hand swells about every other day. He had a similar issue with his left hand, but it was not as bad as the right. (Tr. 49-51). It would be hard for Claimant to kneel or stoop down to pick up papers from the floor because of his back, but Claimant was not receiving any treatment for his back. (Tr. 51). Claimant experienced muscle spasms in his legs. He elevated his legs every day for at least thirty minutes, which helped with his hip pain. (Tr. 54). He also has pain in his feet and received shots to relieve the pain. The shots helped, but it could hurt to walk on his feet. (Tr. 56). Claimant has difficulty holding onto objects such as coffee cups or pens and sometimes dropped things. (Tr. 57). He could stand for about ten minutes and sit for thirty to forty minutes before he would need to get up and move around. (Tr. 58).

Claimant could shower and dress himself, go grocery shopping with his girlfriend sometimes but had to sit down after a while, and tried to help with dishes. He no longer mows. He liked to fish, but he no longer enjoys it. (Tr. 51-53, 55).

Although the ALJ summarized the medical and opinion evidence in the decision (Tr. 19-20), his only finding as to the consistency of Claimant's symptoms was that they were not entirely consistent with the medical evidence or other evidence in the record for the reasons explained in the decision. (Tr. 19). His evaluation of Claimant's symptoms, however, was conclusory and did not "closely and affirmatively" link his findings to substantial evidence in the record or articulate any reasons for his findings. *See Kepler*, 68 F.3d at 391 ("[T]he link between the evidence and credibility determination is missing; all we have is the ALJ's conclusion."). The ALJ barely mentioned Claimant's hearing testimony, some of which included further limitations Claimant experienced because of his impairments or addressed factors pertinent to the evaluation of symptoms. *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996)("[I]n addition to discussing the evidence supporting his decision, the ALJ must also discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects.") (citation omitted); *see also Hamlin v. Barnhart*, 365 F.3d 1208, 1221 (10th Cir. 2004) (finding ALJ's credibility determination was not supported by substantial evidence when the ALJ mentioned testimony from the claimant's first hearing in the decision, but he failed to reference the claimant's testimony from his second hearing, even though some of his statements addressed factors the ALJ should consider).

On remand, the ALJ should conduct a proper symptom evaluation. He should properly consider Claimant's testimony from the administrative hearing and then clearly articulate reasons for how he evaluates Claimant's symptoms. Moreover, because the ALJ's symptom evaluation affects his overall RFC determination, the ALJ must consider Claimant's severe and non-severe impairments and evaluate the opinion evidence. *See Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009) ("Since the purpose of the [symptom] evaluation is to help the ALJ access a claimant's RFC, the ALJ's [symptom evaluation] and RFC determinations are inherently intertwined."). Based on his RFC determination, the ALJ should then determine whether Claimant can perform his past relevant work and/or other work in the national economy.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of the Social Security Administration should be REVERSED and the case REMANDED for further proceedings. The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate

review of this decision by the District Court based on such findings.

DATED this 24th day of February, 2022.

_/s/ Kimberly E. West_
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE